United States District Court
Southern District of Texas
**ENTERED**
August 01, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| YAX ECOMMERCE LLC, | § § § | |
| Plaintiff, | § § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-809 |
| PROFICIENT SUPPLY LLC, SHAWN CHAPMAN, AND DAVID ARNETT, | § § § § | |
| Defendants. | § § § | |

**MEMORANDUM AND ORDER**

**I.     Background**

Yax Ecommerce LLC, which is organized and has its principal place of business in Wyoming, provides its customers with software and physical inventory space to help them maintain and increase their online businesses. In June 2023, Yax entered into an Asset Purchasing Agreement with Proficient Supply LLC, which is organized and has its principal place of business in North Carolina.  In the Agreement, Yax agreed to purchase: (i) a subset of Proficient's tangible assets located in Hickory, North Carolina; (ii) the assignment of a leasehold interest covering warehouse facilities in Hickory (the "Hickory Warehouse"); and (iii) intangible assets (including Proficient's proprietary software products). (Docket Entry No. 3 at 4; Docket Entry No. 4 at 2). The Agreement contains a "Dispute Resolution" clause, which includes a mandatory arbitration clause, a forum-selection clause, and a choice-of-law clause. The Agreement states that any dispute arising out of or relating to the Agreement will be resolved by arbitration held in Texas and "shall be governed by the laws of the State of Texas." (Docket Entry No. 4-2 at 38).   The clause states, in full:

> Section 9.3. Dispute Resolution. Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Claims shall be heard by a single arbitrator. The place of arbitration shall be in Harris County, Texas. The arbitration shall be governed by the laws of the State of Texas. Each party will, upon written request of the other party, promptly provide the other with copies of all relevant documents. There shall be no other discovery allowed. The arbitrator will have no authority to award punitive or other damages not measured by the prevailing party's actual damages, except as may be required by statute. The arbitrator shall not award consequential damages in any arbitration initiated under this section. Each party shall bear its own costs and expenses and an equal share of the arbitrator's and administrative fees of arbitration. The award of the arbitrator shall be accompanied by a reasoned opinion. Except as may be required by law, neither a party nor an arbitrator may disclose the existence, content, or results of any arbitration hereunder without the prior written consent of both parties.

Docket Entry No. 4, Ex. B., sec. 9.3.

In April 2024, Yax sued Proficient, asserting three causes of action. First, Yax alleged that Proficient materially breached the Agreement by: (i) denying Yax access to the Hickory Warehouse beginning on January 3, 2024; and (ii) failing to provide Yax with the proprietary software it had purchased. (Docket Entry No. 1 at 5–6). Second, Yax alleged that Proficient fraudulently misrepresented that Proficient's proprietary software existed. Yax claims that such software "never existed" and that Proficient had made false representations to increase the purchase price. (Docket Entry No. 3 at 8). Third, Yax alleged that Proficient was liable for conversion by unlawfully assuming and exercising control over property in the Hickory Warehouse. Yax alleged that this property included both items that Yax owned and products that Yax's customers owned, which were "earmarked for inventory in . . . Amazon stores, as per the terms of Service Agreements between Yax and its customers." (*Id.* at ¶ 11).

Proficient moved to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6). (Docket Entry No. 4). Yax responded, (Docket Entry No. 10), and Proficient replied, (Docket

2

Entry No. 11). This court granted Proficient's motion to dismiss for lack of personal jurisdiction. (Docket Entry No. 12).

Shawn Chapman and David Arnett, officers of Proficient, then filed their own motion to dismiss under Federal Rules of Civil Procedure 12(b)(1), (2), (3), and (6), (Docket Entry No. 17), as well as a motion for oral argument, (Docket Entry No. 19). Yax responded, (Docket Entry No. 20), and the individual defendants replied, (Docket Entry No. 21).

II.     **The Rule 12(b)(2) Standards**

    A.     **General Personal Jurisdiction**

A federal court may exercise general personal jurisdiction over a corporate defendant if its "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum state." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation and internal quotation marks omitted). For an individual defendant, federal courts paradigmatically exercise general jurisdiction when that individual is domiciled in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). If an individual defendant is physically served within the forum state, the defendant can expect to have to answer claims before its federal courts, regardless of where those claims arose. *See, e.g.*, *Burnham v. Super. Ct.*, 495 U.S. 604, 610–11 (1990).

    B.     **Specific Personal Jurisdiction**

The Texas long-arm statute confers jurisdiction to the Constitutional limit. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). This court's determination of specific jurisdiction

3

over a nonresident defendant—in line with the traditional Fifth Circuit test—is a three-step process. *Ward v. Rhode*, 544 F. App'x 349, 352 (5th Cir. 2013) (citation omitted).

First, the defendant must have minimum contacts with the forum state. *Id*. Establishing that a defendant has minimum contacts with the forum state protects against violations of due process. Even a single contact, however, can support specific jurisdiction, if the defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

Second, the plaintiff's cause of action must "arise out of or relate to" the defendant's forum-related conduct. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984). Specific jurisdiction requires a nexus between the defendant's contacts with the forum state and each underlying controversy in a suit. *Bristol-Myers Squibb Co. v. Superior Court of Ca., San Francisco Cty.*, 137 S. Ct. 1773, 1781 (2017); *see also Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 318, 66 S. Ct. 154, 159, 90 L. Ed. 95 (1945). A federal court may exercise specific jurisdiction over a defendant with respect to one particular cause of action, and not another cause of action. *Goodyear*, 564 U.S. at 919. When no such nexus exists for a particular claim, a federal court may not exercise specific jurisdiction, without regard to the defendant's other connections and activities within the forum state.

Third, the exercise of personal jurisdiction must be fair and reasonable. "The defendant's contacts with the forum State must be such that maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. 310 at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)). In other words, the

4

nonresident's "purposeful availment" must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This fundamental notion of fairness helps protect against cases wherein a defendant is haled into a jurisdiction "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193–94 (5th Cir. 2019) (quoting *Burger King*, 471 U.S. at 475).

C. **Burden of Proof**

Under Federal Rule of Civil Procedure 12(b)(2), "[w]hen the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a prima facie case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). "Proof by a preponderance of the evidence is not required." *Johnston*, 523 F.3d at 609 (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990)). "[U]ncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *Id.* (internal quotations omitted). But the district court is not required "to credit conclusory allegations, even if uncontroverted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

III. **Analysis**

A. **General Personal Jurisdiction**

"For general jurisdiction, the 'paradigm forum' is an 'individual's domicile,' or, for corporations, 'an equivalent place, one in which the corporation is fairly regarded as at home.'"

5

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 255–56 (2017) (citing *Goodyear*, 564 U.S. at 924 (2011)). Mr. Chapman and Mr. Arnett are not domiciled in Texas, nor was either defendant served while located in Texas. The court does not have general personal jurisdiction over the defendants.

### B. Specific Personal Jurisdiction

The Texas long-arm statute creates specific jurisdiction "to the limits of constitutional due process." *Mink*, 190 F.3d at 335. Determining specific jurisdiction in this case is a three-step analysis.

First, for each claim, Yax bears the burden of establishing that the individual defendants have minimum contacts with Texas and that they have purposefully availed themselves of the "privilege of conducting activities within the forum state." *Burger King*, 471 U.S. at 475 (quoting *Hanson*, 357 U.S. at 253). Second, Yax must establish some nexus between Yax's claims and the defendants' contacts with Texas. *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781; *see also Goodyear*, 564 U.S. at 919. Third, the defendants' purposeful availment of the benefits and protections of Texas laws must show that they can "reasonably anticipate" being haled into Texas federal courts. *World–Wide Volkswagen Corp.*, 444 U.S. at 297.

Yax's argument for establishing the defendants' minimum contacts with Texas rests on two contentions: (i) Mr. Chapman and Mr. Arnett, as members of Proficient, conducted contract negotiations with a Yax representative located in Texas; and (ii) Mr. Chapman's and Mr. Arnett's tortious activities caused harm in Texas. (*See generally* Docket Entry No. 20).

Mr. Chapman's and Mr. Arnett's participation in contract negotiations with a Yax representative who happened to be located in Texas at the time of negotiating does not itself establish minimum contacts with Texas. "Merely contracting" with a nonresident principal's in-

6

state agent is insufficient to establish minimum contacts with the nonresident defendant or "constitute the required purposeful availment of the benefits and protections of Texas law." *Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311–12 (5th Cir. 2007); *see also Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1028 (5th Cir. 1983) ("A plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state."). Yax's unilateral activity of sending an employee to Texas for contract negotiations with Proficient also fail to establish Mr. Chapman's and Mr. Arnett's minimum contacts with Texas. *Hanson*, 357 U.S. at 253. While certain negotiations might have occurred with Yax representatives who were physically located in Texas, Proficient employees did not travel to Texas to negotiate the Agreement. (Docket Entry No. 4 at ¶ 5).

In addition, the Agreement was not signed in Texas and does not call for performance in Texas. (Docket Entry No. 4-1 at ¶ 6; Docket Entry No. 4-2). The Fifth Circuit has declined to exercise specific personal jurisdiction over individuals and corporations that maintained substantially greater contacts with Texas during the course of contract negotiations than Proficient did in this case. *See, e.g.*, *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 787–88 (5th Cir. 1986) (finding no specific jurisdiction in Texas over an Oklahoma corporation that (i) entered into a contract with a Texas corporation, (ii) sent a final contract agreement from Oklahoma to Texas, (iii) sent three checks from Oklahoma to Texas in partial performance of its contractual obligations, and (iv) engaged in extensive telephonic and written communication with the corporation in Texas); *see also Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir.

7

1985) (holding that there was no specific jurisdiction in Texas when material performance under the contract was performed in Mexico).

Finally, there is no evidentiary basis for Yax's contention that its alleged injuries were either "caused" or "felt" in Texas. Even if allegedly false representations were made during contract negotiations between the defendants and Yax when Yax representatives were in Texas, the Agreement was not signed when either party was in the forum state. (Docket No. 4-1 at ¶ 6). The record suggests that the harm Yax alleges occurred either in North Carolina, where the Hickory Warehouse is located, or in Wyoming, where Yax has its principal place of business. (Docket Entry No. 3 at ¶ 1).

The court lacks specific personal jurisdiction over Mr. Chapman and Mr. Arnett.

C. **The Forum-Selection Clause**

Yax argues that even if Mr. Chapman and Mr. Arnett lack minimum contacts with Texas, the court may still exercise specific personal jurisdiction over Proficient because of the Agreement's forum-selection clause. The clause states that "[t]he place of arbitration shall be in Harris County, Texas. The arbitration shall be governed by the laws of the State of Texas." (Docket Entry No. 4-2 at 38). "When a party agrees to arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed-upon state may exercise personal jurisdiction over the parties *for the limited purpose of compelling arbitration*." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (emphasis added). A forum-selection

clause that specifies the jurisdiction and venue for arbitration proceedings in Texas does not, itself, operate as consent to personal jurisdiction in Texas courts. *Id*.

### IV.   Conclusion

The motion to dismiss is granted. (Docket Entry No. 17). The motion for oral argument is denied. (Docket Entry No. 19). The case is dismissed, without prejudice, for lack of personal jurisdiction over Mr. Chapman and Mr. Arnett.

SIGNED on August 1, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge